**VEDDER PRICE (CA), LLP**
Michael J. Quinn, Bar No. 198349
mquinn@vedderprice.com
Marie E. Christiansen, Bar No. 325352
mchristiansen@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: +1 424 204 7700
F: +1 424 204 7702

*Attorneys for the Board Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WEIRD SCIENCE LLC and WILLIAM ANDERSON WITTEKIND, derivatively on behalf of RENOVARO BIOSCIENCES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SINDLEV *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00645-HDV-MRW <br><br> **BOARD DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Filed concurrently with Declaration of Michael J. Quinn; Request for Judicial Notice; and Proposed Order] <br><br> Date:          September 26, 2024 <br> Time:          10:00 a.m. <br> Courtroom:  5B <br> Judge:        Hon. Hernan D. Vera |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2024, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 5B of the above-captioned Court, located at 350 West First Street, Los Angeles, California, 90012, Defendants Rene Sindlev, Mark Dybul, Gregg Alton, Carol Brosgart, Henrik Grønfeldt-Sørensen, James Sapirstein, and Jayne McNicol (collectively, the "Board Defendants") will and hereby do move this Court to dismiss plaintiffs Weird Science LLC's ("Weird Science") and William Anderson Wittekind's ("Wittekind," and together with Weird Science, "Plaintiffs") First Amended Complaint on the grounds set forth in the Board Defendants' accompanying Motion to Dismiss with Memorandum of Points and Authorities, including that (1) Plaintiffs violated Delaware law by sending a pre-suit demand for corrective action to the board of Renovaro Biosciences, Inc. then immediately filing a complaint alleging demand futility; (2) Plaintiffs are not suitable derivative plaintiffs; (3) the Court should abstain from hearing this case under the *Colorado River* doctrine because there is pending state court litigation involving related claims arising from the same set of facts, and is thus "substantially similar;" and (4) the First Amended Complaint fails to state claims for violations of Rule 10b-5 and Sections 14(a) and 13(d) of the Securities and Exchange Act of 1934, breach of fiduciary duty, and corporate waste.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 12, 2024.

This Motion is based upon this Notice of Motion, the concurrently filed Motion to Dismiss with Memorandum of Points and Authorities and all pleadings, papers, and records on file in this matter, and any additional evidence or argument to be received by the Court at the hearing on this matter.

1 | Dated:       July 19, 2024          VEDDER PRICE (CA), LLP

2

3 |                                     By:*/s/ Michael J. Quinn*
                                        Michael J. Quinn
4 |                                     Marie E. Christiansen

5 |                                     *Attorneys for Board Defendants*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   SUMMARY OF ALLEGATIONS ...................................................... 2

III.  PROCEDURAL HISTORY ................................................................. 3

IV.   LEGAL STANDARD .......................................................................... 4

V.    ARGUMENT ....................................................................................... 5

    A.    Plaintiffs' Action Is Barred by Their Filing of This Action Alleging "Demand Futility" Immediately after Making a Pre-Suit Demand ............................................................................. 5

    B.    Plaintiffs Are Unsuitable to Serve as Derivative Plaintiffs ................. 9

    C.    The Court Should Abstain from Hearing This Case under the Colorado River Doctrine ................................................................ 14

    D.    Plaintiffs Fail to State Claims ........................................................ 15

        1.    Section 10(b) Claim Fails ................................................... 15

        2.    Section 14(a) Claim Fails ................................................... 17

        3.    Section 13(d) Claim Fails ................................................... 19

        4.    Breach of Fiduciary Duty Claim Fails ................................. 20

        5.    Corporate Waste Claim Fails .............................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988) ................................................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 4

*Beard Research, Inc. v. Kates*,
  8 A.3d 573 (Del. Ch. 2010) ...................................................................... 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 4

*Bigfoot Ventures Ltd. v. Knighton*,
  2023 WL 9318505 (C.D. Cal. Sept. 14, 2023) ......................................... 13

*Boeing Co. v. Shrontz*,
  1992 WL 81228 (Del. Ch. Apr. 20, 1992) .................................................. 8

*BTZ, Inc. v. Nat'l Intergroup, Inc.*,
  1993 WL 133211 (Del. Ch. Apr. 7, 1993) .............................................. 7, 8

*Busch ex rel. Richardson Elecs., Ltd. v. Richardson*,
  2018 WL 5970776 (Del. Ch. Nov. 14, 2018) ............................................. 8

*City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*,
  2019 WL 549938 (Del. Ch. Feb. 12, 2019) ................................................ 8

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) .................................................................................. 14

*Dahle v. Pope*,
  2020 WL 504982 (Del. Ch. Jan. 31, 2020) ............................................. 7, 9

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) .................................................................... 3

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000) .............................................................. 17, 19

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ............................................................................................ 16

*Enochian Biosciences, Inc. v. Gumrukcu, et al.*,
    Case No. 22STCV34071 .................................................................................... 10

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ............................................................................................ 16

*In re Finisar Corp. Derivative Litig.*,
    2012 WL 2873844 (N.D. Cal. July 12, 2012) ............................................. 16, 17

*FLI Deep Marine LLC v. McKim*,
    2009 WL 1204363 (Del. Ch. Apr. 21, 2009) ...................................................... 8

*Freedman v. Adams*,
    58 A.3d 414 (Del. 2013) ..................................................................................... 21

*Grimes v. Donald*,
    673 A.2d 1207 (Del. 1996) ................................................................................... 8

*Hornreich v. Plant Indus., Inc.*,
    535 F.2d 550 (9th Cir. 1976) .............................................................. 10, 12, 14

*Larson v. Dumke*,
    900 F.2d 1363 (9th Cir. 1990) ............................................................. 12, 13, 14

*In re MRV Commcns, Inc. Derivative Litig.*,
    2010 WL 5313442 (C.D. Cal. Dec. 27, 2010) .................................................. 20

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989) ........................................................................... 15

*Nano Dimension Ltd. v. Murchinson Ltd.*,
    681 F. Supp. 3d 168 (S.D.N.Y. 2023), *aff'd*, 102 F.4th 136 (2d Cir. 2024) ................................................................................................................. 20

*Nathanson v. Polycom, Inc.*,
    87 F. Supp. 3d 966 (N.D. Cal. 2015) .................................................................. 4

*Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*,
    436 F. App'x 792 (9th Cir. 2011) ....................................................................... 8

*R.R. Street & Co., Inc. v. Transp. Ins. Co.*,
   656 F.3d 966 (9th Cir. 2011) ................................................................................. 15

*Renovaro Inc. v. Gumrukcu, et al.*,
   Case No. 2024-0678 ............................................................................................. 11

*Schwartz v. Perseon Corp.*,
   175 F.Supp.3d 390 (D. Del. 2016) ...................................................................... 8, 9

*SEC v. Yuen*,
   221 F.R.D. 631 (C.D. Cal. 2004) ........................................................................... 5

*SEC v. Zouvas*,
   2016 WL 6834028 (S.D. Cal. Nov. 21, 2016) ....................................................... 5

*Segal v. Gordon*,
   467 F.2d 602 (2d Cir. 1972) ................................................................................ 20

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ................................................................................. 5

*Smith v. Ayres*,
   977 F.2d 946 (5th Cir. 1992) ............................................................................... 10

*Solak ex rel. Ultragenyx Pharm. Inc. v. Welch*,
   2019 WL 5588877 (Del. Ch. Oct. 30, 2019) ......................................................... 8

*In re Solera Holdings, Inc. S'holder Litig.*,
   2017 WL 57839 (Del. Ch. Jan. 5, 2017) ............................................................. 18

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
   97 F.4th 634 (9th Cir 2024) ................................................................................. 16

*Spiegel v. Buntrock*,
   571 A.2d 767 (Del. 1990) ............................................................................. 6, 7, 8

*Stotland v. GAF Corp.*,
   469 A.2d 421 (Del. 1983) ..................................................................................... 8

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) ............................................................................... 5

*In re Verisign, Inc. Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............................................. 6, 16, 17, 18

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................................ 5

*Wayne Cnty. Employees Ret. Sys. v. Mavenir, Inc.*,
  2021 WL 311284 (D. Del. Jan. 29, 2021) ...................................................... 18

*Weird Science LLC v. Renovaro Biosciences, Inc., et al.*,
  Case No. 2023-0599-MTZ ................................................................... 11, 12, 15

**Statutes**

15 U.S.C. § 78 .................................................................................. 5, 16, 17, 19

**Other Authorities**

5 *Moore's,* Fed. Prac. - Civ. § 23.1.09. ............................................................ 10

FED. R. CIV. P. Rule 9(b) ..................................................................... 5, 16, 20

FED. R. CIV. P. Rule 11 ................................................................ 4, 8, 12, 13

FED. R. CIV. P. Rule 12(b)(6) .............................................................. 4, 5

FED. R. CIV. P. Rule 14a-9 ...................................................................... 17

FED. R. CIV. P. Rule 23.1(a) ............................................................... 10, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Rene Sindlev, Mark Dybul, Gregg Alton, Carol Brosgart, Henrik Grønfeldt-Sørensen, James Sapirstein, and Jayne McNicol (the "Board Defendants") move to dismiss the first amended complaint ("FAC") of Plaintiffs Weird Science LLC ("Weird Science") and William Anderson Wittekind ("Wittekind," together with Weird Science, "Plaintiffs").

## I.    INTRODUCTION

There are multiple, bright-line legal defects in Plaintiffs' FAC that necessitate dismissal of this suit and are now ripe for adjudication.

First, Plaintiffs' pleading is a clear violation of Delaware law that a plaintiff cannot make a pre-suit demand on a company's board seeking corrective action, then file a lawsuit alleging demand would be futile and therefore excused.  On January 19, 2024, Plaintiffs sent the Renovaro Biosciences, Inc. ("Renovaro") board a letter demanding it take corrective action with respect to twenty-one issues identified by Plaintiffs.  When the board did not immediately agree to Plaintiffs' demands, they filed this lawsuit just two business days later, alleging that demand was excused as futile.  But having made the demand, Plaintiffs waived *as a matter of law* any argument that demand would have been futile.

Second, Plaintiffs are unsuitable to serve as plaintiffs in *any* derivative action involving Renovaro.  Plaintiffs are adverse to various members of the Renovaro board and the company itself in *three* other pending civil actions, including a lawsuit filed by Plaintiffs in which its theories of liability are nearly identical to those raised in this lawsuit.  Because a derivative plaintiff sues in a fiduciary capacity for the benefit of the corporation, and not themselves, a plaintiff who is concurrently engaged in other litigation adverse to the corporation is considered a fiduciary with divided loyalty who cannot adequately represent the company or its shareholders.

Third, under the *Colorado River* doctrine, this Court should abstain from exercising jurisdiction in favor of pending Delaware state court litigation on

1   substantially related matters.

2        Aside from these threshold defects, Plaintiffs have also failed to sufficiently

3   state claims against the Board Defendants for violations of the Securities and

4   Exchange Act of 1934 (the "Exchange Act"), breach of fiduciary duty, or corporate

5   waste.

6   **II.   SUMMARY OF ALLEGATIONS[1]**

7        On September 29, 2023, Renovaro, a publicly traded company, noticed a

8   special meeting of stockholders to be held on January 25, 2024 (the "Special

9   Meeting"), and filed a preliminary proxy statement on December 22, 2023.

10  Renovaro filed a definitive proxy statement on January 3, 2024, and further

11  supplemented the proxy statement on January 16, 2024.  (FAC ¶ 2.)  The Special

12  Meeting related to Renovaro's proposed acquisition of GEDi Cube Intl Ltd ("GEDi

13  Cube").  (FAC ¶ 2.)  Plaintiffs allege the proxy statements filed by Renovaro omitted

14  material information relating to the board's decision not to obtain a fairness opinion,

15  the identities of consultants who advised on the transaction, and personal connections

16  among certain individuals involved.  (FAC ¶ 4.)  The FAC alleges these omissions

17  were material and caused uninformed stockholders to approve the acquisition that

18  provided GEDi Cube with approximately 50% of Renovaro's shares.  (FAC ¶ 6.)

19       Separately, Plaintiffs allege the Board Defendants authorized transactions with

20  alleged insiders (Rene Sindlev, RS Bio, RS Group, Ole Abildegaard, Paseco, and

21  Lincoln Park) that permitted them to purchase stock pursuant to "spring-loaded"

22  stock options immediately before the release of positive material non-public

23  information.  (FAC ¶ 7.)  Finally, Plaintiffs allege Board Defendant Rene Sindlev

24  and his company, RS Bio, filed Schedule 13D forms that are deficient because they

25  ─────────────────

26  [1] The FAC spans almost 100 pages comprised of 170 paragraphs, so the Board
    Defendants will not attempt to provide a detailed summary of the allegations here.

27  Citations to specific allegations in the FAC are provided, as needed, in Section V.D,
    *infra*, regarding Plaintiffs' failure to state claims.

28

1   fail to disclose the acquisition of warrants and purchases made by RS Group and a

2   Section 13(d) "group" comprised of Sindlev, RS Bio, Abildegaard, and Paseco.

3   (FAC ¶¶ 11-12.)

4   **III.    PROCEDURAL HISTORY**

5          Late on Friday, January 19, 2024, Plaintiffs sent a letter to Renovaro's board

6   titled "Demand for Corrective Action," along with a draft of the complaint that was

7   ultimately filed.[2]  (Declaration of Michael J. Quinn ("Quinn Decl.") Ex. A.)  The

8   letter stated that Plaintiffs' counsel is "writ[ing] to demand that the Company's Board

9   of Directors (Board) take the following immediate and corrective action . . . ," and

10  identified twenty-one separate corrective actions Plaintiffs wanted the board to take,

11  including many that Plaintiffs demanded the board complete in advance of the

12  Special Meeting, which was to be held only five days later.  (*Id*.)  Plaintiffs' demand

13  letter also gave the board only until close of the following business day to agree to

14  Plaintiffs' demands, or Plaintiffs would file their complaint.

15         When the Renovaro board did not immediately acquiesce to the demands,

16  Plaintiffs filed this suit just two business days later.  Concurrently with their

17  complaint, Plaintiffs filed an *ex parte* application for a temporary restraining order

18  seeking to enjoin the Special Meeting set to occur less than two days later, the

19  morning of January 25, 2024—a meeting of which Plaintiffs were aware as early as

20  September 29, 2023.  Following a hearing, the Court denied the application.  In its

21  order, the Court took note of the several bright-line, legal defects in Plaintiffs' claims

22  that the Board Defendants had briefed in opposition to the application, including

23  those raised again in this Motion.

24         Despite the Court's observations, the detailed briefing on these issues by the

25

26  _____

    [2] The Court may consider "documents whose contents are alleged in a complaint and

27  whose authenticity no party questions, but which are not physically attached to the
    [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th

28  Cir. 2012).  Plaintiffs' demand letter is referenced in Paragraphs 124-29.

Board Defendants, and meet-and-confer communications, Plaintiffs insisted on maintaining this action. Indeed, Plaintiffs even sent another demand letter to the Renovaro board on February 27, 2024 that expanded their demands for corrective action and "areas of investigation" to twenty-six discrete topics. (Quinn Decl. Ex. B.) The Board Defendants thus filed a motion for sanctions pursuant to Rule 11 on March 7, 2024. (Dkt. No. 18.) In their opposition to that motion, Plaintiffs stated they intended to amend their complaint to add allegations regarding circumstances following the Special Meeting, including that the Renovaro board had in essence rejected Plaintiffs' demands, putting them on "solid ground to argue demand futility." (Dkt. No. 22-1, at 13.) The Court denied the sanctions motion, granted Plaintiffs' request to amend the complaint, and invited the Board Defendants to file a motion to dismiss in due course. (Dkt. No. 27.)

The FAC fails to cure the fundamental fatal defects and must be dismissed.

## IV.  <u>LEGAL STANDARD</u>

Rule 12(b)(6) exists to weed out implausible claims, including ones precluded as a matter of law. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal can be based on the lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory." *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 971 (N.D. Cal. 2015). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"In addition to the pleading requirements of Rule 12(b)(6), a complaint alleging securities fraud must satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *SEC v. Zouvas*, 2016 WL 6834028, at *3 (S.D. Cal. Nov. 21, 2016). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Hence, allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051–52 (9th Cir. 2001). The "complaint must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004). Claims brought under the Exchange Act are subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires a complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief . . . all facts on which that belief is formed". 15 U.S.C. § 78u-4(b)(1). Conclusory allegations that a defendant's conduct was fraudulent are insufficient. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

## V.    ARGUMENT

### A.    Plaintiffs' Action Is Barred by Their Filing of This Action Alleging "Demand Futility" Immediately after Making a Pre-Suit Demand

A fatal, threshold defect requiring dismissal is Plaintiffs' clear violation of fundamental precepts of Delaware law in filing this suit—namely, that their demand upon Renovaro's board for "corrective action" serves as an *absolute bar* to their subsequent immediate filing of this lawsuit alleging "demand futility." (*See* FAC ¶¶ 122-24.)

Delaware law governs Plaintiffs' purported shareholder derivative claims. Renovaro is a corporation formed under the laws of Delaware.  (*See* FAC ¶ 18.) Federal courts have long held that "[u]nder the 'internal affairs' doctrine, the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders." *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1214 (N.D. Cal. 2007).  "Internal corporate affairs involve those matters that are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Id*. at 1214.

As the Delaware Supreme Court has explained: "A basic principle of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990).  "The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation." *Id.*  "Consequently, such decisions are part of the responsibility of the board of directors." *Id*. (citing 8 Del. C. § 141(a)).

Under Delaware law, when a shareholder seeks to sue derivatively on behalf of a corporation, the shareholder must make a choice:  either (1) the shareholder makes a pre-suit demand upon the corporation's board of directors, in which case it must await the board's decision as to the demand, and any such decision is entitled to judicial deference under the "business judgment rule," or (2) the shareholder must file suit and plead particularized facts showing why demand upon the board would have been futile and thus excused.  The shareholder *cannot do both*, as Plaintiffs have done here.

Specifically, Plaintiffs sent their demand letter to the Renovaro board on January 19, 2024, setting out twenty-one demands for corrective action, and stating that the board had one business day to agree, or Plaintiffs would file the complaint that accompanied the demand letter.  When the board was unable to review and

respond to these numerous demands within the one business day deadline, Plaintiffs filed the complaint.  Despite having made the pre-suit demand, which constitutes a *binding admission* the board is properly situated to evaluate their purported concerns, *Spiegel*, 571 A.2d at 777, Plaintiffs' complaint alleged that demand would be futile— allegations they repeat in the FAC.  Having made a pre-suit demand, Plaintiffs are deemed to have waived, as a matter of law, any argument that demand would have been futile and did not need to be made prior to filing the lawsuit (i.e., demand excused), and could not file their lawsuit unless and until the Board refused to take action on their demand.

The Delaware Court of Chancery squarely addressed this very scenario in *Dahle v. Pope*, 2020 WL 504982 (Del. Ch. Jan. 31, 2020).  Relying on the Delaware Supreme Court decision in *Spiegel*, the Court of Chancery held:

> Delaware's common law of corporations makes it clear that when a stockholder makes a demand upon the company board to take legal action, she is ***conceding*** that the directors are able to bring their business judgment to bear to consider that demand.  If the board fails to take the action demanded, and the stockholder then wishes to pursue the matter derivatively on behalf of the corporation, ***she cannot successfully assert that the derivative action is justified because the board is unable to consider the matter free of disabling conflict; that is the very concession the stockholder is deemed to have made by making the demand in the first instance* . . .**

> Under Delaware law, a stockholder plaintiff bringing a derivative suit has two options: make a pre-suit demand on the board, or plead demand futility.  The pre-suit demand— if properly rejected—leads to a higher pleading burden. ***These options are mutually exclusive: a stockholder is not permitted to have his cake and litigate it, too.***

*Id*. at *1-4 (emphasis added).  The *Dahle* court thus dismissed the action on the pleadings, given the plaintiff's attempt to file suit shortly after making a pre-suit demand for corrective action, which is exactly what Plaintiffs did here.  *See also BTZ, Inc. v. Nat'l Intergroup, Inc.*, 1993 WL 133211, at *3 (Del. Ch. Apr. 7, 1993) (finding lawsuit premature where plaintiff gave board only eight days to respond to demands

before filing suit). This is consistent with the Delaware Supreme Court's pronouncement that, "*[b]y electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond.* Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel*, 571 A.2d at 777 (emphasis added).

This longstanding and well-established principle of Delaware law has been clearly articulated in numerous cases over the past several decades, and is regularly applied by courts in the Ninth Circuit. Indeed, Defendants are unaware of a single case holding otherwise. *See, e.g., Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, 436 F. App'x 792, 792 (9th Cir. 2011) ("Quantum can't claim demand futility because it made demand on Apex's board of directors.") (citing *Spiegel*); *Busch ex rel. Richardson Elecs., Ltd. v. Richardson*, 2018 WL 5970776, at *8 (Del. Ch. Nov. 14, 2018) ("Where, by contrast, a stockholder elects to make a demand on the corporation to take action, the stockholder tacitly concedes the independence of a majority of the board to respond."); *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938, at *6 (Del. Ch. Feb. 12, 2019); *Grimes v. Donald*, 673 A.2d 1207, 1219 (Del. 1996), *overruled, in part, on other grounds*; *Solak ex rel. Ultragenyx Pharm. Inc. v. Welch*, 2019 WL 5588877 (Del. Ch. Oct. 30, 2019) ("Delaware law prohibits a stockholder from both making a demand and pleading demand futility"); *Boeing Co. v. Shrontz*, 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992); *BTZ*, 1993 WL 133211, at *3; *FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009); *Schwartz v. Perseon Corp.*, 175 F. Supp. 3d 390, 403 (D. Del. 2016); *Stotland v. GAF Corp.*, 469 A.2d 421, 422-23 (Del. 1983).[3]

---

[3] Board Defendants are cognizant of the Court's disfavor for string cites. However, during the hearing on the Rule 11 sanctions motion, the Court seemed to express some degree of uncertainty regarding the well-settled nature of this point of law. The string cites are included to address that uncertainty and demonstrate there is no dispute on this issue.

Plaintiffs attempt to plead around this clear foreclosure of their derivative action by including allegations that, at the time the lawsuit was filed, the board would not have acted in good faith, such that Plaintiffs *would have been* justified in not making a demand.[4] But these *post hoc* justifications are irrelevant because Plaintiffs did, in fact, make a demand, thereby waiving as a matter of law any argument that demand would have been futile. Having made the demand, Plaintiffs are required to give the board an opportunity to investigate and make a decision as to the corrective action demanded before they may file suit. *Dahle*, 2020 WL 504982, at *1-4. The Board Defendants respectfully submit there is no other legally possible result here and have not identified a single case where a court has held otherwise. Accordingly, the Court must dismiss the FAC.

## B.    Plaintiffs Are Unsuitable to Serve as Derivative Plaintiffs

Another threshold legal defect requiring dismissal is that Plaintiffs are patently unsuitable derivative plaintiffs given their many ongoing lawsuits against Renovaro.

A plaintiff who files a shareholder's derivative action is purporting to sue, in

---

[4] Plaintiffs' suggestion that the board's bad faith is demonstrated by the fact that the special committee of independent directors has not completed its investigation in the five months since the pre-suit demand letter was sent, and has not provided Plaintiffs with an update, is unavailing. (FAC ¶ 128.) Notwithstanding that the Board Defendants have no involvement in the investigation, "[t]here is no rule that specifies how long an investigation should take. Instead, the 'amount of time needed for a response will vary in direct proportion to the complexity of the technological, quantitative, and legal issues raised by the demand.'" *Schwartz*, 175 F. Supp. 3d at 404 (finding it was not unreasonable that board took eight months to complete investigation) (internal citations omitted). Nor is the special committee "obliged to involve Plaintiff[s] in its investigation or to apprise [the]m of the status of the ongoing investigation." *Id*. Plaintiffs made twenty-one demands for corrective action in their January 19 letter, then provided a supplemental letter on February 27 that expanded their demand to twenty-six topics. Understandably, the special committee requires considerable time to substantively investigate and make determinations in good faith as to this extensive list of demands.

a fiduciary capacity, for the benefit of the *corporation*—not for their own benefit.  As such, "[a] plaintiff in a shareholder derivative action owes the corporation his undivided loyalty.  The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda."  *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992); *see also* Fed. R. Civ. P. 23.1(a) (a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association").

The archetypical example of a derivative plaintiff who cannot serve as a fiduciary with undivided loyalty to the corporation is a plaintiff who is concurrently engaged in other litigation *adverse* to the corporation.  *See, e.g., Hornreich v. Plant Indus., Inc.*, 535 F.2d 550, 551 (9th Cir. 1976) (affirming dismissal of shareholder's derivative suit based upon, *inter alia*, "the fact that at the time the motion [to dismiss] was heard [the shareholder] was engaged in two pending actions against [the corporation]").  Indeed, "[t]he plaintiff will not fairly and adequately protect other shareholders if the plaintiff is involved in other litigation against the corporation, and the derivative suit was brought to increase plaintiff's leverage in those other cases." 5 *Moore's* Fed. Prac. – Civ. § 23.1.09[5][b].

Here, Plaintiffs are anything but "fair and adequate" representatives—as is demonstrated by, *inter alia*, the multiplicity of claims currently pending between Plaintiffs and Renovaro in Delaware and California.  Plaintiff Wittekind, his husband Serhat Gumrukcu ("Gumrukcu"), and various companies under their control have defrauded Renovaro of millions of dollars, and since October 2022 have been defendants in a civil action brought by Renovaro to recover its damages, currently pending in Los Angeles County Superior Court, styled *Enochian Biosciences, Inc. v. Gumrukcu, et al.*, Case No. 22STCV34071.[5]  (*See* Dkt. No. 18-3, Ex. A.)  In that

---

[5] The Court previously took judicial notice of the complaints in each of the litigations among the parties, except where otherwise noted herein.  (*See* Dkt. No. 27, at n. 2.)

same action, two of the named entity defendants (owned and controlled by Wittekind
and/or Gumrukcu) have filed a cross-complaint against Renovaro seeking declaratory
relief.  (*See id*. Ex. B.)

Also, since June 2023, Plaintiffs have been pursuing a civil action against
Renovaro and other defendants (many of whom are also named defendants in this
action) in the Delaware Court of Chancery styled *Weird Science LLC v. Renovaro
Biosciences, Inc., et al.*, Case No. 2023-0599-MTZ (the "Delaware Action").  (*See*
Dkt. No. 18-3, Exs. C & D.)  Plaintiffs assert claims for fraud, tortious interference
with a contract, breach of fiduciary duty, fraudulent transfer, and declaratory relief.
Although the claims at issue in these other cases need not be identical, or even related
to the claims and allegations in the FAC to disqualify Plaintiffs here, it still bears
noting that the allegations in the Delaware Action overlap with the allegations that
underlie Plaintiffs' theories in this action.  (*Compare* FAC ¶ 7 *with* Delaware Action
FAC ¶¶ 16-18, 121, 126; *compare* FAC ¶¶ 10, 58, 70 *with* Delaware Action FAC
¶¶ 10, 71, 76, 79, 122; *compare* FAC ¶ 12 *with* Delaware Action FAC ¶ 94; *compare*
FAC ¶¶ 39-41 *with* Delaware Action FAC ¶ 18; *compare* FAC ¶¶ 42-46, 57 *with*
Delaware Action FAC ¶ 130-139; *compare* FAC ¶¶ 58, 70 *with* Delaware Action
FAC ¶¶ 10, 71, 76, 79, 122, 161-164.)

Finally, on June 21, 2024, Renovaro filed an action in the Delaware Court of
Chancery styled *Renovaro Inc. v. Gumrukcu, et al.*, Case No. 2024-0678, seeking to
unwind the merger transaction pursuant to which Weird Science (and thus Wittekind)
received its shares in the company on the grounds that Renovaro was fraudulently
induced by Plaintiffs and Gumrukcu.  (*See* Request for Judicial Notice filed
concurrently herewith, Ex. A.)

That Plaintiffs are already engaged in litigation *against* Renovaro on multiple
fronts in their individual capacities renders them plainly unsuitable to serve as

derivative plaintiffs seeking to sue *on behalf of* Renovaro as its fiduciary. *See, e.g., Hornreich*, 535 F.2d at 551. Indeed, should Renovaro's most recent Delaware action succeed, Plaintiffs will no longer hold any shares in the company and thus would not have standing to serve as derivative plaintiffs in this action.

In their opposition to the Board Defendants' Rule 11 motion, Plaintiffs argued that the bright-line rule set forth in *Hornreich* was displaced by an eight-factor test laid out in *Larson v. Dumke*, 900 F.2d 1363 (9th Cir. 1990), but Plaintiffs' reliance on *Larson* is misplaced. *Hornreich*, which remains good law and was actually cited as precedent in *Larson*, involved a derivative action in which the derivative plaintiff was adverse to the corporation in multiple other litigations, just like Plaintiffs here. *Hornreich*, 535 F.2d at 551-52. In contrast, *Larson* did *not* involve a plaintiff who was adverse to the corporation in other litigations at the same time it was attempting to sue derivatively on behalf of the company. For this reason, the court had to establish other criteria for making an assessment when a plaintiff's sufficiency was challenged under Rule 23.1. *Larson*, 900 F.2d at 1367. But *Larson* did not in any way overrule *Hornreich*, which remains the standard when a derivative plaintiff is adverse to the corporation in other lawsuits.

Even if *Larson's* eight-factor test were to apply here, it would only further demonstrate Plaintiffs' inability to adequately serve as plaintiffs. Those eight factors the Court would consider are:

> (1) indications that the plaintiff is not the true party in interest, (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit, (3) the degree of control exercised by the attorneys over the litigation, (4) the degree of support received by the plaintiff from other shareholders, (5) the lack of any personal commitment to the action on the part of the representative plaintiff, (6) the remedy sought by plaintiff in the derivative action, (7) the relative magnitude of the plaintiff's personal interests as compared to his interest in the derivative action itself, and (8) the plaintiff's vindictiveness toward the defendants.

1  *Id*.

2      These factors weigh against a finding that Plaintiffs are adequate derivative

3  plaintiffs here.  Indeed, the numerous other lawsuits among the parties are enough on

4  their own to heavily weigh many of these factors against Plaintiffs.  For example, the

5  first factor concerns the true party in interest in the case.  Based on the other lawsuits

6  among the parties, and the baselessness of their claims, *see, infra* at Section V.D, it

7  is clear that Plaintiffs filed this lawsuit not to benefit the company, but to provide

8  leverage for themselves in the other cases..  *See Bigfoot Ventures Ltd. v. Knighton*,

9  2023 WL 9318505, at *6-7 (C.D. Cal. Sept. 14, 2023).  Similarly, factor seven, which

10  considers the plaintiff's personal interests, weighs against Plaintiffs because their

11  goals in this litigation are to create leverage for their other cases, not to benefit

12  Renovaro.  *Id*. at *8.  As to factor eight, which concerns Plaintiffs' vindictiveness,

13  "the filing of multiple lawsuits can demonstrate vindictiveness and lead to

14  disqualification of an individual as a representative . . . ." *Id*. at *8.  Finally, the Court

15  may also consider Plaintiffs' "'outside entanglements,' such as ongoing litigation

16  between a plaintiff and the defendant corporation," which, as set forth extensively

17  above, necessarily also weighs against Plaintiffs.  *Id*. at *7 (citing *Hornreich*).

18      Even looking beyond the significant issues created by the lawsuits among the

19  parties here, Plaintiffs still cannot establish that they are adequate plaintiffs.  There

20  is no indication that any other Renovaro shareholders support Plaintiffs' derivative

21  action (factor four).  *Id*. at *6.  And with respect to factor three, which concerns the

22  degree of control exercised by attorneys, "a plaintiff is not an adequate representative

23  if he knows little about the facts or legal issues in a derivative suit and grants his

24  attorney broad discretion to investigate and pursue the claim." *Id*. at *8.  Plaintiffs'

25  counsel's outsized role in this litigation is firmly demonstrated by the declarations

26  she submitted in support of Plaintiffs' *ex parte* application and their opposition to the

27  Rule 11 motion (conversely, her clients did not submit any declaration in support of

28

1   either pleading).

2       Specifically, in her declaration in support of Plaintiffs' *ex parte* application,

3   counsel states: "Along with my co-counsel Patrick T. McCloskey, I have been

4   investigating the issues raised in this derivative complaint and ex parte application

5   for several months. The two of us have worked over 400 hours on these issues, with

6   approximately 200 of those hours worked in the last 30 days . . . ." (Dkt. No. 2-1,

7   ¶ 3.) She also details her monitoring of Renovaro's SEC filings, as well as her review

8   of "tens of thousands of documents." (*Id.* ¶ 12.) Counsel then describes dozens of

9   documents and communications (on which her clients were not copied) relating to

10  the allegations in the complaint, as if she were a fact witness. It is thus clear that

11  counsel is the driving force behind this litigation, and is the party with knowledge of

12  the facts and legal issues here, not Plaintiffs.

13      Plaintiffs are not suitable derivative plaintiffs under either the bright-line rule

14  in *Hornreich* or the eight-factor test in *Larson*.

### C.    The Court Should Abstain from Hearing This Case under the *Colorado River* Doctrine

17      The *Colorado River* doctrine—whereby federal courts abstain from exercising

18  jurisdiction in favor of pending state court actions on related matters—provides yet

19  another independent basis on which the Court should decline even to entertain this

20  action. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818

21  (1976).

22      The *Colorado River* doctrine considers eight factors:

23      (1)    which court first assumed jurisdiction over any property at
24             stake;

25      (2)    the inconvenience of the federal forum;

26      (3)    the desire to avoid piecemeal litigation;

27      (4)    the order in which the forums obtained jurisdiction;

28      (5)    whether federal law or state law provides the rule of decision on

the merits;

(6)     whether the state court proceedings can adequately protect the rights of the federal litigants;

(7)     the desire to avoid forum shopping; and

(8)     whether the state court proceedings will resolve all issues before the federal court.

*R.R. Street & Co., Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011).

"These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *American Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).

*Colorado River* does not require that the pending state and federal actions be exactly the same; it is enough if they are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Where, as here, parallel state and federal actions include related claims that all arise from the same set of facts, courts have held that the cases are "substantially similar." *See id.*

Here, as detailed above: the Delaware Action is "substantially similar" to the instant case; the Delaware Chancery Court acquired jurisdiction *long before* this case was filed, and that case is well underway; the alleged breaches of fiduciary duty and related claims that Plaintiffs are asserting against Defendants in this action are governed largely by Delaware law; this action will undoubtedly result in "piecemeal litigation"; and the Delaware Chancery Court can certainly resolve the issues at hand and "adequately protect the rights of the federal litigants" (indeed, *Plaintiffs, themselves*, initially chose to file suit in Delaware). For each of these reasons, this Court should not allow this case to proceed. *R.R. Street*, 656 F.3d at 978-79.

### D.     Plaintiffs Fail to State Claims

#### 1.     Section 10(b) Claim Fails

The elements of a Section 10(b) claim are (1) a misrepresentation or omission

of a material fact, (2) scienter, (3) reliance (4) in connection with the purchase or sale of a security, (5) economic loss, and (6) loss causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). A claim must allege both falsity and scienter with particularity. *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 640 (9th Cir 2024). Plaintiffs have failed to adequately allege falsity and scienter.

For a complaint to allege falsity, it must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. § 78u-4(b)(1). "Scienter" refers to "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). Because this is a derivative suit, in order to sufficiently state a claim, Plaintiffs must show that the corporation itself was defrauded. *See In re Finisar Corp. Derivative Litig.*, 2012 WL 2873844, at *7 (N.D. Cal. July 12, 2012).

Plaintiffs allege numerous Section 10(b) violations, all of which lack the specificity required by Rule 9(b). The first group of alleged violations concern "spring-loaded" transactions. Specifically, Plaintiffs allege that Sindlev facilitated a spring-loaded transaction by purchasing 131,579 shares at $0.57, and that the Renovaro board "either knew or was reckless in not knowing the value of the common stock was much greater than $0.57 per share" at the time. (FAC ¶¶ 8, 39.) While Plaintiffs identify the specific transaction, they fail to allege Renovaro was actually defrauded by it. Indeed, it is unclear how Renovaro, as the seller in the transaction, could be a victim of fraud when it possessed identical information to Sindlev, the buyer. *See In re VeriSign*, 531 F. Supp. 2d at 1190-91.

Plaintiffs' wholly conclusory allegation that the board as a whole "knew or was reckless in not knowing the value" of the stock completely fails to meet the standard for alleging scienter required by the PSLRA. *See id*. at 1207 ("It is not sufficient under the PSLRA to allege scienter against defendants as a group."); *see also* 15 U.S.C. § 78u-4(b)(2) (plaintiff must "state with particularity facts giving rise

to a strong inference that the defendant acted with the required state of mind"). These same arguments dispel Plaintiffs' allegations of other spring-loaded transactions (FAC ¶¶ 31-34, 37, 57-69.)

Plaintiffs' second group of violations involves an alleged failure to disclose Renovaro's conversion of its repayment of Paseco's principal and interest payments to common stock. Plaintiffs allege the failure is "evidence that the Board (including Sindlev) . . . were trying to conceal this exploitation of MNPI and corporate waste." (FAC ¶¶ 44-46.)  Not only do Plaintiffs impermissibly allege such concealment "against defendants as a group," *see In re VeriSign*, 531 F. Supp. 2d at 1207, it is unclear how Renovaro, in receiving a loan that incurred interest, could have been defrauded by a corporate decision to repay it with common stock instead of cash. *In re Finisar Corp.*, 2012 WL 2873844, at *7.  Whether it be converting a principal or interest payment into common stock or compensating consultants with common stock (FAC ¶¶ 48, 55), Plaintiffs' derivative 10(b) claim fails to allege that Renovaro is the actual victim of any of these actions.

## 2.    Section 14(a) Claim Fails

To state a claim under Section 14(a), a plaintiff must allege that a proxy statement contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading. 15 U.S.C. § 78j(b); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). "[A] Section 14(a), Rule 14a-9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction." *Id*.

As a threshold matter, it is unclear how Renovaro could have been misled by a proxy statement that *it issued*, as required to sufficiently plead a derivative, rather than a direct, claim.  Indeed, "Plaintiffs fail to allege any injury suffered as a result of the allegedly misleading proxy statements—that is, they allege no direct injury

suffered by [Renovaro] as a corporation as a direct result of the transaction that was at immediate issue in the proxy [approval of the merger]." *In re VeriSign*, 531 F. Supp. 2d at 1213.

Even if Renovaro's shareholders acted upon false proxy statements, Plaintiffs fail to allege that any of the omissions or misrepresentations were actually material or that they were the essential links in obtaining the shareholders' approval of the merger. First, Plaintiffs allege that Renovaro omitted material information concerning a fairness opinion contemplated in the Stock Purchase Agreement, but which was subsequently waived by the board. (FAC ¶¶ 72-83.) However, far from omitting material information about the fairness opinion, the Board actually *did disclose* in its January 16, 2024 Proxy Statement that "a fairness opinion would not be meaningful," and therefore, the Renovaro Board "did not give any weight to the valuation." Thus, where, as here, the board does not rely upon certain information in making a business judgment, the omission of that information from the Proxy Statement is not material. *Wayne Cnty. Emp. Ret. Sys. v. Mavenir, Inc.*, 2021 WL 311284, at *9–10 (D. Del. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 1147042 (D. Del. Mar. 25, 2021). As a result, Plaintiffs' allegations rebut their own claim: the omission of the fairness opinion cannot be the "essential link" in obtaining the shareholders' approval of the merger when the shareholders knew that a fairness opinion was waived, but nevertheless approved the merger.

Second, Plaintiffs allege that Renovaro omitted material information about the identity of consultants. (FAC ¶¶ 90-92.) However, Plaintiffs fail to allege how the identity of any consultant is material, let alone an essential link to accomplishing the shareholders' approval of the merger. Without demonstrating "a substantial likelihood that a reasonable shareholder would consider [consultant identities] important in deciding how to vote," the FAC fails to allege a claim. *In re Solera Holdings, Inc. S'holder Litig.*, 2017 WL 57839, at *9 (Del. Ch. Jan. 5, 2017).

Finally, Plaintiffs allege that Renovaro omitted material information about the personal and familial relationships of Nina Storms, Karen Brink, and Avram Miller. (FAC ¶¶ 87-89.) But a complaint must "support the inference that it was substantially likely that a reasonable [] shareholder would have considered the nature of [the] relationship . . . in deciding how to vote." *Desaigoudar*, 223 F.3d at 1022. Plaintiffs' wholly conclusory allegations that these relationships are material fail to meet this standard. Indeed, Plaintiffs fail to even allege that shareholders would have considered the nature of these relationships. Plaintiffs further fail to allege that omitting Storms' familial relationship with Brink was an essential link to merger approval. Moreover, Plaintiffs' own allegations acknowledge that Renovaro sufficiently disclosed that Storms and Miller worked together at World Online/Intel Capital and shareholders could conduct their own independent research if they believed this was material. (FAC ¶ 88.)

### 3.    Section 13(d) Claim Fails

Section 13(d) requires any person who has accumulated more than 5% of a company's stock to file a disclosure with the SEC that details the owner's background, how they acquired the stock, and any "arrangements or understandings" regarding the "transfer of any of the securities" (i.e., a "group"). 15 U.S.C. § 78m(d)(1).

First, Plaintiffs allege Schedule 13D filings and amendments by Sindlev and his companies, RS Bio and RS Group, contain false or misleading information. (FAC ¶ 94.) Plaintiffs fail, however, to specify with particularity how the alleged falsity is material. For example, the FAC alleges that Amendment 4 references a private placement on October 13, 2017, but that no such private placement took place. (*Id.*) In other words, while Plaintiffs take issue with the disclosure of "how" the stock was acquired, they nonetheless acknowledge that Sindlev, RS Bio, and RS Group accurately disclosed the accumulation of more than 5% of Renovaro's stock, the very

purpose of the disclosure obligation.   Similarly, Plaintiffs allege Amendment 6 contains various misleading statements, but do not allege that it did not accurately disclose the change in beneficial ownership.  (*Id*.)

Second, seeking to allege that Sindlev failed to disclose a Section 13(d)(3) group, Plaintiffs identify a number of transactions involving Sindlev, RS Group, RS Bio, Gronfeldt-Sorenson, Greenfield, Abildgaard and Paseco.  (FAC ¶¶ 100-07.) However, Plaintiffs fail to allege, as required, any specific facts supporting an agreement and objective amongst them.  *Nano Dimension Ltd. v. Murchinson Ltd*., 681 F. Supp. 3d 168, 181 (S.D.N.Y. 2023), *aff'd,* 102 F.4th 136 (2d Cir. 2024) (finding complaint failed to allege Section 13(d) group where plaintiffs alleged board members "acted" together but "conspicuously omit[ted] that they 'agreed' to act"); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972) ("The unadorned allegation that defendants are acting as a group is not adequate to sustain a Section 13(d) claim.").

### 4.   Breach of Fiduciary Duty Claim Fails

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty."  *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010).  "A breach of fiduciary duty occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, [or] misuse of confidential information . . . ."  *Id*.  Where a claim for breach of fiduciary duty arises out of fraud, it must be pled with particularity pursuant to Rule 9(b).  *In re MRV Commcns, Inc. Derivative Litig.*, 2010 WL 5313442, at *12 (C.D. Cal. Dec. 27, 2010).  Here, Plaintiffs' claims sound in fraud.  (FAC ¶ 93 ("In [breaching their duties], these Defendants acted in bad faith, maliciously, oppressively, and with intent to defraud.").)  The heightened pleading standard applies.

Plaintiffs' breach of fiduciary duty claim arises out of the same allegations as their Section 10(b) fraud claim (FAC ¶¶ 31-34, 37, 39, 44-46, 48, 55-69), and fails for similar reasons.  The first group of alleged breaches concerns the spring-loaded

transactions, which group all of the Board Defendants together and fail to specify how each participated in breaching their fiduciary duty through the transactions. Plaintiffs' second group of breaches concern the Board's decision to convert principal/interest payments to common stock, and to compensate consultants with common stock. (FAC ¶¶ 44-46.) The FAC fails to allege how or why the decision to use stock to repay principal and interest, or to compensate consultants, rather than scarce cash was unfair, fraudulent, or wrongful, or how it harmed the company.

### 5.    Corporate Waste Claim Fails

To state a claim for waste, a stockholder must allege with particularity that the board authorized action that no reasonable person would consider fair:

> To recover on a claim of corporate waste, the plaintiffs must shoulder the burden of proving that the exchange was so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration. A claim of waste will arise only in the rare, unconscionable case where directors irrationally squander or give away corporate assets. This onerous standard for waste is a corollary of the proposition that where business judgment presumptions are applicable, the board's decision will be upheld unless it cannot be attributed to any rational business purpose.

*Freedman v. Adams*, 58 A.3d 414, 417 (Del. 2013). Plaintiffs' allegation of corporate waste fails for two reasons. First, through the alleged spring-loaded transactions, Renovaro "received" assets—i.e., desperately needed cash—it did not disperse assets. Indeed, the FAC fails to allege how Renovaro's corporate assets were wasted as a result of the sale of these shares. Second, Plaintiffs fail to allege that any of these exchanges were so one-sided as to rise to the level of the rare, unconscionable case where directors irrationally squander or give away corporate assets. *See Freedman*, 58 A.3d at 417.

1    Dated:        July 19, 2024                    VEDDER PRICE (CA), LLP

2

3                                                  By:/s/ Michael J. Quinn

4                                                     Michael J. Quinn
                                                      Marie E. Christiansen

5                                                  *Attorneys for Board Defendants*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Rene Sindlev, Mark Dybul, Gregg Alton, Carol Brosgart, Henrik Grønfeldt-Sørensen, James Sapirstein, and Jayne McNicol, certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Dated:        July 19, 2024                    VEDDER PRICE (CA), LLP


                                        By:*/s/ Michael J. Quinn*
                                        Michael J. Quinn
                                        Marie E. Christiansen

                                        *Attorneys for Board Defendants*

1

## **CERTIFICATE OF SERVICE**

2

3
        I hereby certify that on July 19, 2024, I caused to be electronically filed a true

4
and correct copy of the foregoing with the Clerk of Court using the CM/ECF system

5
and that all counsel of record will be served via the Notice of Electronic Filing

6
generated by CM/ECF.

7
                                            */s/  Michael J. Quinn*

8
                                            Michael J. Quinn

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28